# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JESUS HERNANDEZ,

      Plaintiff,

v.                                            CV 08-0160 RB/WPL

DEA - ALBUQUERQUE,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Acting *pro se*, Jesus Hernandez brought this suit against "DEA - Albuquerque," seeking the return of $7000 seized from him. The matter is before me now on the DEA's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, and related responses and replies. For the reasons that follow, I recommend that summary judgment be granted in favor of the DEA.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 2003, Hernandez was stopped by two DEA agents at a bus station in Albuquerque. (Doc. 2 at 2.) Hernandez consented to a search of his person. Although the agents found no drugs, they did find $7000 in currency in Hernandez's pockets.[1] The agents seized the currency and gave Hernandez a receipt, which he signed and which contained his address in Mexico. Although the receipt is not in the record, Hernandez states that it "was signed under plaintiff [sic] real name of Jesus Hernandez with address at Caucho y Nardos 5855, Colonia Paso del Norte, Juarez, Chihuahua, Mexico." (*Id.*) Hernandez was deported to Mexico the next day. (*Id.*)

---

[1] Hernandez claims that he earned this money while working as a roofer and that he was paid in cash because he was illegally in this country.

On August 25, 2003, the DEA sent Hernandez a written notice of the currency's seizure by international certified mail, return receipt requested.  The notice was addressed to Vicente Rodriguez-Parra, Caucho y Nardos 5855 Colonia Del Norte, Juarez, CH, Mexico.  (Doc. 14 Ex. A2.)  The notice stated that "procedures to administratively forfeit" the currency were underway and explained that the forfeiture could be contested by filing a claim with the DEA by September 29, 2003.  (*Id.* Ex. A1.)  Notice of the seizure was also published in the *Wall Street Journal* on September 8, September 15, and September 22, 2003, under the name "Rodriguez-Parra, Vicente AKA Hernandez, Jesus." (*Id.* Ex. A3.)  These notices stated that the deadline for filing a claim was October 22, 2003.  (*Id.*)

On September 8, 2003, Hernandez was arrested as he tried to cross the border between Mexico and El Paso, Texas.  (Doc. 2 at 2.)  He was detained and subsequently prosecuted for illegal reentry in the Western District of Texas.  (*Id.* at 2-3; Doc. 20 Ex. 1.)  On October 2, 2003, Hernandez's sister received the mailed notice and signed the return receipt.  (Doc. 2 at 3.)

Hernandez did not file a claim.  Consequently, the DEA forfeited the currency to the United States in March 2004.  (*Id.*; Doc. 14 Ex. A4.)

In September 2007, Hernandez sent a letter to the DEA, requesting the return of the currency. (Doc. 14 Ex. A5; Doc. 20 at 3.)  In October 2007, the DEA responded by letter, explaining that a notice regarding the forfeiture was published in the *Wall Street Journal* and that another notice was sent to Hernandez "at the address you provided law enforcement" in August 2003.  (Doc. 14 Ex. A6.)  The letter also advised Hernandez that the time for contesting the forfeiture had expired.  (*Id.*; Doc. 20 at 3.)  Thereafter, Hernandez commenced this suit.[2]

---

[2] The DEA has submitted a declaration by its forfeiture counsel, stating that the DEA conducted an inquiry regarding Hernandez's incarceration status after receiving his September 2007 letter.  The "inquiry revealed that Vicente Rodriguez-Parra aka Jesus Hernandez has nine (9) aliases and was using the Social

**FORFEITURE PROCEDURES AND RELATED LAW**

Proceeds of drug offenses are subject to forfeiture to the United States.  *See* 21 U.S.C. §
881(a)(6).  To effect an administrative (or nonjudicial) forfeiture of currency, the government must
send a written notice to any party who appears to have an interest in the currency.  *See* 19 U.S.C. §
1607(a); 21 U.S.C. § 881(d); *United States v. Rodgers*, 108 F.3d 1247, 1250 (10th Cir. 1997).  The
notice must advise the party of the forfeiture procedures.  19 U.S.C. § 1607(a).  The government
must also publish a notice for at least three successive weeks in a newspaper of general circulation
in the judicial district in which the forfeiture is pending.  *Id.*; 21 C.F.R. § 1316.75(a); *Rodgers*, 108
F.3d at 1250.

A person claiming an interest in property subject to an administrative forfeiture may file a
claim "not later than the deadline set forth in a personal notice letter (which deadline may be not
earlier than 35 days after the date the letter is mailed), except that if that letter is not received, then
a claim may be filed not later than 30 days after the date of final publication of notice of seizure."  18
U.S.C. § 983(a)(2)(A), (B).  If a timely claim is filed, the government must institute judicial
proceedings for forfeiture of the property.  *See id.* § 983(a)(3)(A).  If a timely claim is not filed, the

---

Security Number of an individual that was deceased.  This information also reveals that from July 17, 2003
through June 24, 2007, the precise whereabouts of [Hernandez] cannot be determined.  From June 25, 2007
to date, [he] has been incarcerated in the Reeves County Detention Center III."  (Doc. 14 Ex. A at 4.)
Hernandez takes issue with the assertion that his whereabouts could not be determined, noting that he was
arrested and convicted of reentry in the Western District of Texas.  Because the DEA had no reason to suspect
that Hernandez was incarcerated when it mailed the notice or when the return receipt was received, I find it
unnecessary to rely on the forfeiture counsel's statement regarding Hernandez's whereabouts.  However, a
check of the electronic dockets of the Western District of Texas and of this District reveals the following.  In
cause number 03-CR-1831, "Jesus Hernandez-Ramirez" was arrested on September 8, 2003 and was detained
pending trial in the Western District.  He pled guilty and was sentenced in January 2004 to fifteen months in
prison followed by three years of supervised release.  In October 2005, "Jesus Hernandez-Ramirez" was found
in New Mexico and was charged with illegal reentry in cause number 05-CR-2399.  He pled guilty and was
sentenced to twenty-one months in prison.  As a result of this offense, his supervised release was revoked and
he was ordered to serve an additional eighteen months following his sentence in this District.

currency will be declared forfeited and the declaration will have the same force and effect as a final decree and order of forfeiture resulting from a judicial proceeding, thus vesting title in the United States.  19 U.S.C. § 1609(a), (b).

A person who did not receive notice of the administrative forfeiture proceedings may file a motion to set aside the declaration of forfeiture.  18 U.S.C. § 983(e)(1).  The motion must be granted if the person did not know or have reason to know of the seizure within time to file a timely claim and if the government should have known of the person's interest in the currency yet failed to take "reasonable steps" to notify the person.  *Id.*

A federal district court also has jurisdiction under 28 U.S.C. § 1331 to determine whether any notice provided by the government comports with due process.  *Rodgers*, 108 F.3d at 1250.  The Tenth Circuit has stated that "federal question jurisdiction pursuant to 28 U.S.C. § 1331 is available for the limited purpose of considering collateral due process attacks; that is, deciding whether the forfeiture offended due process rights."  *United States v. Deninno*, 103 F.3d 82, 84 (10th Cir. 1996).  However, "[i]f an administrative forfeiture does not have any procedural defects, other challenges to the forfeiture, which could have been addressed under the statutory and regulatory procedures, must be considered waived."  *Id.* at 84-85.

## DISCUSSION

Hernandez's complaint asserts four claims: 1) the DEA agents lacked probable cause to search him and to seize the currency; 2) the notice of the forfeiture was inadequate under the Due Process Clause of the Fifth Amendment; 3) the forfeiture violated 21 U.S.C. § 881 because there is no evidence that the currency is traceable to a drug offense; and 4) the forfeiture violated the Excessive Fines Clause of the Eighth Amendment.

4

In its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, the DEA seeks a dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject matter jurisdiction over Hernandez's first, third, and fourth claims. But, as the DEA acknowledges, the Court has jurisdiction over Hernandez's second claim. Because the parties have submitted materials outside of the pleadings regarding this claim, I will first consider the DEA's alternative argument that it is entitled to summary judgment. If the DEA is entitled to summary judgment on the second claim, the remaining claims must be considered waived. *See Deninno*, 103 F.3d at 84-85; *United States v. Schinnell*, 80 F.3d 1064, 1069 (5th Cir. 1996) (refusing to consider argument that forfeited property was not traceable to proceeds of fraud after the administrative forfeiture was final); *see also United States v. DeSantiago-Flores*, No. 98-1459, 1999 WL 691655, at *2 (10th Cir. Sept. 7, 1999) (refusing to reach argument that forfeited money had no nexus to drug offenses because there was no showing that the administrative forfeiture procedures, such as notice, were defective).

Summary judgment should be granted when the record demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

The *Mullane* standard is the analytical framework for determining whether the notice to Hernandez satisfied due process. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002). This standard requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). It does not require actual

notice. *See Dusenbery*, 534 U.S. at 170.  When the government can reasonably ascertain the name and address of an interested party, service by certified mail, return receipt requested, generally satisfies due process. *United States v. Clark*, 84 F.3d 378, 380-81 (10th Cir. 1996).  But if the mailed notice is returned unclaimed, the government must take reasonable steps to locate the claimant. *Rodgers*, 108 F.3d at 1252.  For purposes of determining whether the government has taken reasonable steps, the government is not only chargeable with information it has within its possession but also with information it could have discovered by making reasonable efforts. *Id.* at 1251.  The government is not, however, required to make "heroic efforts." *Dusenbery*, 534 U.S. at 170; *see also Lobzun v. United States*, 422 F.3d 503, 507 (7th Cir. 2005) ("Absent exceptional circumstances, written notice of forfeiture by certified mail to the claimant's residence satisfies due process, even if the claimant does not receive actual notice.").

Hernandez contends that the mailed notice was insufficient because he was incarcerated in the El Paso County Jail on the reentry charge when the notice was received by his sister at her home. He suggests that the DEA should have sent the notice to the public defender who was representing him in the reentry case.  The cases cited by Hernandez to support his arguments are inapposite. *See, e.g., Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154 (2d Cir. 1994); *Aero-Medical, Inc. v. United States*, 23 F.3d 328 (10th Cir. 1994).

In *Torres*, the DEA, knowing that the claimant was incarcerated, sent notice to his last known home address and to a prison.  Both notices were returned undelivered.  The notice sent to the prison was returned with a stamp stating that he was no longer at the prison. 25 F.3d at 1156.  The court held that a mailed notice is insufficient if it "is returned undelivered, the intended recipient is known by the notifying agency to be in government custody, and the agency fails to take steps to locate him

in order to effectuate delivery of the notice." *Id.* at 1161. Here, Hernandez was not in custody when the notice was mailed. Although he was in custody when the notice was received by his sister, there is nothing to indicate that the DEA was aware of this fact. Moreover, the notice was not returned undelivered.

In *Aero-Medical*, the DEA ignored information in its possession and deliberately mailed notice to an invalid address. 23 F.3d at 330. That is not what happened here. Although Hernandez describes the address where the notice was sent as his sister's home, he does not deny that he gave that address to the DEA agents or that he lived there before illegally reentering the United States.

This case is more analogous to *Krecioch v. United States*, 221 F.3d 976 (7th Cir. 2000). The DEA seized cash and other property from Krecioch in his presence. 221 F.3d at 978. The DEA published notices of forfeiture in *USA Today*. It also sent notices to Krecioch's home by certified mail. *Id.* at 979. On the day that the notices were sent, Krecioch was free on bond and living at home, having rejected a plea bargain. Two days later, he agreed to plead guilty and the district court revoked his bond, sending him straight to jail. A few days later still, his sister signed the return receipts for the notices. *Id.* The Seventh Circuit held, "In the absence of bad faith, the forfeiture notices sent by certified mail . . . to his then-current address, received by his family members and combined with newspaper publication, were sufficient to satisfy the *Mullane* standard for notice." *Id.* at 981. The court acknowledged that "the government violates due process when it purposely mails notice of forfeiture to the claimant's residence knowing that the claimant is incarcerated or in federal custody." *Id.* at 980-81. But when the DEA sent the notices, Krecioch was not in custody and the DEA could not have anticipated that two days later he would agree to plead guilty, have his bond revoked, and be immediately incarcerated. *Id.* at 981; *see also Lobzun*, 422 F.3d at 504-05, 508

7

(holding that notice was adequate where DEA mailed notice by certified mail to address provided by claimant on receipt for currency and return receipt indicated that notice was received at the correct address, but the signature of the addressee was illegible).

Similarly, in this case the currency was seized by DEA agents in Hernandez's presence. Notice was published in the *Wall Street Journal*, which, like *USA Today*, is a national newspaper in general circulation. Notice was also mailed by certified mail, return receipt requested, to Hernandez's address. After the mailed notice was sent, Hernandez was taken into custody and the notice was actually received by his sister.[3] There is nothing in the record to show that the DEA should have suspected, either when it mailed the notice or when it received the return receipt, that Hernandez had crossed the border again and had been detained.

Hernandez also claims that both the published and mailed notices omitted critical information. He points out that the notices did not advise him that he had to post a cost bond with his claim. Although claimants were previously required to provide a cost bond, *see* 19 U.S.C. § 1608, that requirement no longer applies. *See* 18 U.S.C. § 983(a)(2)(E); *see also Tourus Records v. Drug Enforcement Admin.*, 259 F.3d 731, 733 n.2 (D.C. Cir. 2001) ("Congress abolished the bond requirement for forfeiture proceedings commenced after August 23, 2000."). Hernandez additionally contends that the mailed notice did not advise him that he had until October 22, 2003 to file a claim.

---

[3] Although the return receipt shows that the notice was received a few days after the September 29, 2003 deadline, it was received before the October 22, 2003 deadline. Since the mailed notice was not received before the September deadline, presumably the October deadline would have been applicable. No effort was made to claim the currency between the date of receipt of the mailed notice and the date the currency was declared forfeited in March 2004. In fact, Hernandez waited until September 2007 to contact the DEA about the currency.

This is because the October 22, 2003 date applied only if he did not receive the mailed notice.  *See* 18 U.S.C. § 983(a)(2)(A), (B).

Finally, Hernandez complains that the *Wall Street Journal* is not circulated in Mexico and that the notices were written in English, which neither he nor his sister understands.[4]  The DEA was required to publish notice in a "newspaper of general circulation in the judicial district in which the processing for forfeiture is brought."  21 C.F.R. § 1316.75(a).  There is no requirement that the newspaper be circulated in Mexico.  Hernandez does not dispute that the *Wall Street Journal* is a newspaper of general circulation in New Mexico.  *Cf. United States v. Robinson*, 434 F.3d 357, 367-68 (5th Cir. 2005) (holding that the *New York Times* is a paper of general circulation in Houston, Texas).

Hernandez's complaint regarding the use of English is also not well taken.  "It has long been established that due process allows notice of a hearing (and its attendant procedures and consequences) to be given solely in English to a non-English speaker if the notice would put a reasonable recipient on notice that further inquiry is required."  *Nazarova v. Immigration & Naturalization Serv.*, 171 F.3d 478, 483 (7th Cir. 1999).  The Second Circuit has held that this principle "is equally applicable to nonresidents . . . in their dealings with governmental authorities of the United States or any of its constituent jurisdictions."  *See Toure v. United States*, 24 F.3d 444, 446 (2d Cir. 1994).  The court held that the DEA satisfied due process by mailing English-language

---

[4] These contentions were raised for the first time in "Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Return of Property," which was docketed as a supplemental response to the motion to dismiss or for summary judgment.  (Doc. 23.)  Hernandez filed this document after he had already filed a response to the DEA's motion and the DEA had filed a reply to the response and a notice of completion of briefing.  The DEA argues that the document is in effect a surreply that should be stricken from the record.  *See* D.N.M.LR-Civ. 7.4(b) ("The filing of a surreply requires leave of the Court.").  Although I agree that the document is improper, I will consider the new contentions in the interest of justice.

notices of administrative forfeiture to the prison where the claimant was being held and to his home address in Togo.  *Id.* at 445-46.  The notice that was sent to Hernandez's address in Mexico was sent by international certified mail and contained the seal of the DEA.  It was sufficient to put the recipient on inquiry notice.

### CONCLUSION

For the reasons stated above, I conclude that notice of the administrative forfeiture satisfied the requirements of due process.  Hernandez's other arguments must therefore be considered waived.  Accordingly, I recommend that summary judgment be granted in favor of the DEA.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

---

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

10